**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION**

NO. 4:10-CV-142-D

MARK DANIEL LYTTLE,         )
                                       )
        Plaintiff,          )
                                       )
v.                              )     **MEMORANDUM &**
                                       )     **RECOMMENDATION**
                                       )
THE UNITED STATES OF AMERICA,  )
*et al*.,                           )
                                       )
        Defendants.      )
_____)

       This cause is before the Court upon the following motions: 1) Defendant The United States of America's ("United States") motion to dismiss (DE-49); and 2) the motion to dismiss filed by Defendants Dashanta Faucette, Dean Caputo and Robert Kendall ("ICE Defendants")(DE-51). These motions are now ripe for adjudication and have been referred to the undersigned for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636.   (DE-70).

## I.   Background

       In this action, Plaintiff seeks injunctive relief as well as compensatory and punitive damages as a result of his allegedly wrongful and illegal detention and deportation.[1]   (DE-8, ¶ 1). Plaintiff was born in Salisbury, North Carolina on August 2, 1977 and is a United States citizen. *Id.* at ¶¶ 19, 49.   In the summer of 2008, he was a patient of Cherry Hospital in Goldsboro, North Carolina – a psychiatric hospital operated by the State of North Carolina, Department of Health and Human Services.   *Id.* at ¶ 25.   While a patient at Cherry Hospital, he was charged with inappropriately touching a female orderly and was ultimately convicted of misdemeanor assault on

---

[1] For purposes of these motions, the undersigned has, as he must, taken all of the factual allegations of the Amended Complaint as true.   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

a female under N.C. Gen. Stat. § 14-33. *Id.* at ¶ 26. He was sentenced to a term of incarceration of 100 days at Neuse Correctional Institution ("NCI"). *Id.*

At the time of Plaintiff's incarceration, NCI was cooperating with Immigration and Customs Enforcement ("ICE") agents by identifying inmates believed to be foreign born and non-United States citizens. *Id.* at ¶ 28. Specifically, NCI intake employees identified certain inmates for further investigation, and then notified ICE when it was determined that an inmate possibly could be an undocumented immigrant. *Id.* at 29.

During the booking process at NCI, Plaintiff indicated that he was born in North Carolina. *Id.* at 30. However, an unnamed Defendant employed by NCI noted on the intake form that Plaintiff was "Oriental" and that his citizenship was "Alien." *Id.* at ¶ 31. Likewise, this unnamed Defendant also listed Plaintiff's birth country as "Mexico." *Id.* Based on this misidentification, Raleigh ICE officials were notified and an investigation into Plaintiff's citizenship was initiated. *Id.* at ¶ 32.

On September 2, 2008, Plaintiff was interviewed by Defendant Dashanta Faucette, an immigration enforcement agent with ICE. *Id.* at ¶ 35. Plaintiff asserts that Agent Faucette "was aware that [Plaintiff] was cognitively impaired and that he had, among other things, bipolar disorder." *Id.* at ¶¶ 35, 41. Agent Faucette wrote: 1) Plaintiff's name is "Jose Thomas" and that Mark Daniel Lyttle is an alias; 2) Plaintiff's country of citizenship was Mexico; and 3) that Plaintiff entered the United States without permission at the age of three. *Id.* at ¶¶ 36-38. These notations were erroneous. His notes also misstate Plaintiff's home address. *Id.* at 37. Furthermore, Plaintiff contends that when this interview concluded, Plaintiff "was not offered an opportunity to review the contents of the entries written on the form by Defendant Faucette, nor was [Plaintiff] informed of what Defendant Faucette had written." *Id.* at ¶ 40. Rather, Plaintiff

2

was instructed to sign his name on a certain line. *Id.* Despite Agent Faucette's notation that Plaintiff's name was "Jose Thomas", Plaintiff signed the form "Mark Lyttle." *Id.*

Defendant Faucette performed a search of the United States Department of Justice Federal Bureau of Investigation Criminal Justice Information Services Division ("CJISD") and other databases on or about September 4, 2008. *Id.* at ¶ 42. According to Plaintiff, "[n]umerous records produced as a result of these computerized database searches revealed that [Plaintiff] was a U.S. citizen with a valid Social Security number." *Id.* Conversely, Plaintiff contends that these records contain no mention of "Jose Thomas" or of Plaintiff using that alias. *Id.* Despite having access to this information, Plaintiff argues that no Defendant made an attempt to verify Plaintiff's citizenship, nor did any Defendant attempt to contact Plaintiff's family. *Id.* at 55.

Several ICE agents—including Defendants Faucette, Dean Caputo, Robert Kendall and several other unnamed Defendants—performed computer database searches on or about September 5, 2008. *Id.* at ¶ 43. Plaintiff contends that the records reviewed by the ICE Defendants contained numerous references to Plaintiff's Social Security number, as well as numerous references to Plaintiff being an American citizen by birth. *Id.* at ¶¶ 43, 52. Nonetheless, Defendant Dean Caputo signed a "Warrant for Arrest of Alien" so that Plaintiff could be taken into custody and processed for removal. *Id.* at ¶ 45. Defendant Caputo also commenced "removal proceedings under section 238(b) of the Immigration and Nationality Act." *Id.* In support of these proceedings, Defendant Caputo determined that Plaintiff was "not a citizen or national of the United States but rather a native of Mexico and a citizen of Mexico." *Id.* Furthermore, Defendant Caputo noted that Plaintiff could not request a review of this determination by an immigration judge because the Immigration and Nationality Act prohibited Plaintiff's release from custody. *Id.* at ¶ 46. Likewise, Defendant Kendall signed an Immigration

3

Detainer notifying the North Carolina Department of Correction ("NCDOC") that Plaintiff was not to be released from custody because ICE had determined that Plaintiff was of Mexican nationality. *Id.* at ¶ 47.

According to Plaintiff, Defendant Faucette "coerced and manipulated" Plaintiff into signing a statement which waived his legal right to a removal hearing before an immigration judge. *Id.* at ¶ 49. Specifically, Plaintiff contends that "[d]ue to [Plaintiff's] obvious cognitive and developmental limitations, [Plaintiff] was barely able to read, much less comprehend, the documents presented to him by ICE Defendants Faucette and Caputo." *Id.* at ¶ 54. By signing the waiver, Plaintiff incorrectly acknowledged that he was a citizen of Mexico and agreed to be voluntarily deported to Mexico. *Id.* The form that Plaintiff signed also acknowledged that Plaintiff's name was "Jose Thomas", although Plaintiff again signed it with his true name, "Mark Lyttle." *Id.* at 51.

Plaintiff was scheduled to be released from state custody on or before October 26, 2008. *Id.* at ¶ 58. Instead, Plaintiff was delivered into ICE custody on or about October 28, 2008 and his detention was continued. *Id.* at ¶ 58. On or about November 3, 2008, Plaintiff was interviewed by ICE Agent David Collado. *Id.* at ¶ 60. During this interview, Plaintiff stated that he was a United States citizen and repeatedly denied being a Mexican citizen. *Id.* at 60. Agent Collado nonetheless proceeded to charge that Plaintiff was deportable from the United States on account of his criminal convictions. *Id.* at ¶ 62. ICE Agent Tracy Moten issued a formal Notice to Appear to Plaintiff on or about November 5, 2008. *Id.* at ¶ 64. This Notice to Appear alleged that Plaintiff was "not a citizen or national of the United States' but rather 'a native of Mexico and a citizen of Mexico [who] arrived in the United States at or near UNKNOWN PLACE, on or about 1980.'" *Id.*

4

ICE Agent Marco Mondragon interviewed Plaintiff on November 12, 2008. *Id.* at ¶ 72. During this interview, Plaintiff again stated that he was a United States citizen. *Id.* at ¶ 73. According to Plaintiff, Agent Mondragon disregarded Plaintiff's claim of citizenship as well as the independent evidence of Plaintiff's citizenship. *Id.* at ¶ 74. Plaintiff further contends that he "provided answers to Agent Mondragon's questions that Agent Mondragon struck through and replaced with different answers, creating a conflicting, inconsistent and factually inaccurate record." *Id.* at ¶ 73. Specifically, Plaintiff signed and initialed an affidavit affirming that his name was "Jose Thomas" and that his father was a citizen of Mexico. *Id.* at ¶ 75.

On or about November 17, 2008, while still in ICE custody, Plaintiff attempted to commit suicide by overdosing on medication provided to him as treatment for type two diabetes milletus. *Id.* at ¶ 76. Plaintiff was treated for toxic drug overdose at Doctors Hospital Columbus, in Columbus, Georgia, and released after several days of monitoring and close observation. *Id.* After his discharge from Doctors Hospital, Plaintiff was transferred back to ICE custody to await a hearing before Immigration Judge William A. Cassidy. *Id.* at ¶ 77. Judge Cassidy ordered that Plaintiff be removed to Mexico on or about December 9, 2008. *Id.* at ¶ 78.

Another criminal background check regarding Plaintiff was conducted by ICE officials on or about December 12, 2008. *Id.* at ¶ 80. This search allegedly uncovered numerous references to Plaintiff's citizenship and his Social Security number. *Id.* Nonetheless, on or about December 18, 2005, Plaintiff was transported to the Mexican border, forced to disembark, and sent off on foot into Mexico. *Id.* at ¶ 90. Plaintiff spoke no Spanish, was completely unfamiliar with Mexico, and had approximately three dollars in his pocket. *Id.* at ¶ 92.

Plaintiff spent the next four months in Central America alternatively homeless, staying in shelters, or imprisoned by national authorities for lack of proper identification. *Id.* at ¶ 91.

5

Ultimately, Plaintiff attempted to cross back into the United States at the Hidalgo, Texas border crossing. *Id.* at ¶ 93. He was detained again by ICE Agents on December 29, 2008. *Id.* at ¶ 94. During this detention, Plaintiff alleges that he repeatedly informed the ICE Agents that he was a U.S. citizen. *Id.* at ¶ 95. ICE agents transported Plaintiff back to the custody of Mexican Immigration officials. *Id.* at ¶¶ 99-100. Thereafter, Mexican authorities deported Plaintiff to Honduras when Plaintiff was unable to prove his Mexican citizenship. *Id.* at ¶ 101. Over the next four months, Plaintiff was incarcerated in Mexico, Honduras and Nicaragua on the grounds that he could not produce evidence of his identity or citizenship. *Id.* at ¶ 104.

Eventually, Plaintiff found his way to the U.S. Embassy in Guatemala City. *Id.* at ¶ 105. There, an embassy employee attempted to verify Plaintiff's claim to U.S. citizenship. *Id.* at ¶ 106. The employee was able to locate Plaintiff's brothers, and ultimately a passport was issued to Plaintiff *Id.* On April 22, 2009, Plaintiff boarded a plane in Guatemala City bound for Nashville, Tennessee. *Id.* at ¶ 107. Upon landing in Atlanta, Georgia to pass through customs, Plaintiff was detained by ICE agents. *Id.* at ¶ 108. He was identified as an alien with a lengthy criminal history. *Id.* at ¶ 108. Despite Plaintiff's protestation that he was a U.S. Citizen and his possession of a passport, ICE Agents Charles Johnston and Brian Keys commenced new deportation proceedings against Plaintiff. *Id.* at ¶¶ 109-114. Plaintiff was detained for six days in Atlanta. *Id.* at ¶ 116. On April 28, 2009, the Department of Homeland Security terminated the deportation efforts. *Id.* at ¶ 118.

Plaintiff filed his Complaint on October 13, 2010 and later amended it on October 15, 2010. (DE's 1, 8). In his Amended Complaint, Plaintiff alleges the following claims: 1) a claim pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) alleging that the ICE Defendants deprived Plaintiff of his constitutional right to liberty

without due process of law in violation of the Fifth Amendment to the United States Constitution; 2) a <u>Bivens</u> claim alleging that the ICE Defendants deliberately and unconstitutionally discriminated against him on the basis of his race and ethnicity so as to deny him equal protection of the law in violation of the Fifth Amendment to the United States Constitution; 3) a <u>Bivens</u> claim alleging that the ICE Defendants intentionally and unlawfully detained him in violation of his constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution; 4) a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671- 2680, alleging that the United States, through its agents, falsely imprisoned him; 5) a FTCA claim alleging that the United States, through its agents, breached its duty of reasonable care by negligently acting or failing to act in such a way that resulted in his wrongful detention and deportation; and 6) a FTCA claim against the United States for the intentional infliction of emotional distress. *Id.* at ¶¶ 121-160. The ICE Defendants have been sued both individually and as agents of the United States of America. *Id.* Plaintiff also alleges several claims pursuant to 42 U.S.C. § 1983 against various state actors which are not at issue in the referred motions. *Id.* at ¶¶ 161-187. Before the undersigned now are motions to dismiss various portions of Plaintiff's claims.

## II. Analysis

### A. The United States' Motion to Dismiss (DE-49)

Plaintiff's fourth through sixth claims for relief (Plaintiff's FTCA claims) seek relief from the United States. The United States has moved to dismiss these claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint...." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir.1999). To survive a Rule 12(b)(6)

7

motion, a plaintiff must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U .S. at 555, 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*   A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability" fail to nudge claims "across the line from conceivable to plausible." *Id.* at 1947-1951.

Rule 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. Evans v. B.F. Perkins Co., 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth

specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity. United States v. Sherwood, 312 U.S. 584, 586 (1941). All waivers of sovereign immunity must be "strictly construed ... in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). For that reason, it is Plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If Plaintiff fails to meet this burden, then his FTCA claims must be dismissed. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).

The FTCA effects a limited waiver of the United States' sovereign immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred. 28 U.S.C § 1346(b); Harris v. United States, 718 F.2d 654, 656 (4th Cir. 1983). The FTCA does not create new causes of action; instead, it serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law. Medina, 259 F.3d at 223(quotation omitted). Since the actions relevant to the instant motions took place in North Carolina, the substantive law of North Carolina applies. *See,* United States v. Neustadt, 366 U.S. 696, 706 n. 15.

The scope of the FTCA's waiver of sovereign immunity is limited by a series of

specific exceptions, each of which is considered jurisdictional. <u>Welch v. United States</u>, 409 F.3d 646, 651 (4th Cir. 2005)(*citing* <u>Medina</u>, 259 F.3d at 223-224), *cert. denied*, 546 U.S. 1214 (2006). The United States raises two of these exceptions—the "discretionary function" and the "due care" exceptions—as bases for its motion to dismiss. (DE-50, pg. 6-12). These exceptions shall be analyzed in turn.

**1.  The discretionary function exception**

The discretionary function exception is codified at 28 U.S.C. § 2680(a), which provides that the United States has not consented to liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). *See also*, <u>Medina</u>, 259 F.3d at 224. The Supreme Court has developed a two-part test to determine if the conduct in question is subject to the discretionary function exception. First, the action or conduct must be "a matter of choice for the acting employee." <u>Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988). The exception thus "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id*. Second, "the challenged conduct must implicate considerations of public policy," as the "very purpose of the discretionary function exception is to prevent judicial 'second-guessing' of administrative decisions grounded in social and political policy." <u>Medina</u>, 259 F.3d at 228 (*citing* <u>United States v. Gaubert</u>, 499 U.S. 315, 322-23 (1991)).

The United States, citing <u>Medina</u>, argues "that the decision to arrest an alien and institute deportation proceedings is a quintessential exercise of immigration officials broad discretion." (DE-50, pg. 8)(internal quotations omitted). Conversely, Plaintiff argues that the discretionary function exception is not applicable because ICE agents have "no discretion to

violate the Constitutional rights of a U.S. citizen." (DE-57, pg. 4).

In <u>Medina</u>, the Fourth Circuit held that the decision to arrest a former foreign diplomat, and to institute deportation proceedings, asserting that he had committed a crime involving moral turpitude was an exercise of the Immigration and Naturalization Service's ("INS") broad discretion based on public policy considerations. <u>Medina</u>, 259 F.3d 226-227. In doing so, the Fourth Circuit cited 8 U.S.C. § 1226(a), which states "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" 8 U.S.C. § 1226(a). Notably, however, the United States argues that Plaintiff was detained by ICE "as a possible criminal alien." (DE-50, pg. 1). Accepting this argument on its face, it appears the United States is asserting it detained Plaintiff pursuant to 8 U.S.C. § 1226(c)(1)—which controls the detention of criminal aliens—rather than 8 U.S.C. § 1226(a). Indeed, later in its own brief the United States argues that Plaintiff was detained under the "mandate" of 8 U.S.C. § 1226(c)(1)(B). (DE-50, pg. 11). Title 8 U.S.C. § 1226(c)(1) states that a criminal alien "shall" be taken into custody. For this reason, the <u>Medina</u> Court specifically noted that "[u]nder 8 U.S.C. § 1226(c)(1) . . . discretion is less clear." <u>Medina</u>, 259 F.3d at 226, fn. 3. Regardless, this analysis ignores one crucial fact: these statutes give immigration officials the authority to detain "aliens", and Plaintiff is not an alien.

At this stage of the proceedings, the undersigned must accept Plaintiff's factual allegations as true. Here, Plaintiff—a U.S. citizen—alleges that immigration agents violated his Constitutional rights by coercing him to sign a statement that ultimately proved false and by deliberately ignoring information that established his citizenship. If proven true, these decisions were not within Defendants' "discretion". Indeed, the <u>Medina</u> court began its analysis by emphasizing "the principle that "[f]ederal officials do not possess discretion to violate

11

constitutional rights or federal statutes." Medina, 259 F.3d at 225 (internal citations and quotations omitted). Accordingly, the undersigned RECOMMENDS that the portion of the United States' motion to dismiss which relies upon the discretionary function exception be DENIED.

**2.  The due care exception**

The due care exception is also codified at 28 U.S.C. § 2680(a) and provides that the waiver of sovereign immunity under the FTCA does not apply to "any claim based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid . . ." 28 U.S.C. § 2680(a). *See also*, Welch, 409 F.3d at 651. The United States cites this exception in defense of Plaintiff's FTCA claims "predicated on the notion that the North Carolina immigration agents detained [Plaintiff] pending his removal proceedings and then physically deported him." (DE-50, pg. 11). Specifically, the United States argues that Plaintiff "was detained under the mandate of 8 U.S.C. § 1226(c)(1)(B)" and that "[o]nce [Plaintiff] was deemed deportable pursuant to this provision, the decision to detain him was statutorily required." *Id.* (internal quotations and citations omitted). Thus, the United States contends that Plaintiff's detention was mandatory. Furthermore, the United States asserts that Plaintiff has failed to allege "an immigration officer deviated from the statute's requirements." *Id.* at pg. 12 (quotation omitted). For these reasons, the United States argues that Plaintiff's FTCA claims are barred by the due care exception.

A two-part analysis is used to determined the applicability of the due care exception. Welch, 409 F.3d at 652. First, it must be determined whether the statute or regulation in question specifically proscribes a course of action for an officer to follow. *Id.* Second, if a specific action is mandated, it must then be determined whether the officer exercised due care in following the

dictates of that statute or regulation.  *Id.*  If due care was exercised, sovereign immunity has not been waived.  *Id.*

Here, the statute in question did not mandate the actions taken by Defendants.  As noted above 8 U.S.C. § 1226(c) mandates the detention of criminal aliens, and Plaintiff is not an alien.  Even assuming that the statute was applicable to Plaintiff, Plaintiff has clearly asserted in his Amended Complaint that Defendants did not exercise due care in following the dictates of 8 U.S.C. § 1226(c)(1).  As previously noted, Plaintiff contends that Defendants, among other things, coerced him into signing a false statement and deliberately ignored information establishing his U.S. citizenship.  If proven true, these allegations demonstrate a lack of due care.  Accordingly, the undersigned RECOMMENDS that the portion of the United States' motion to dismiss which relies upon the discretionary function be DENIED.

**3.   Plaintiff substantive claims**

The FTCA only provides jurisdiction, not the substantive cause of action.  An action under the FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward. Carlson v. Green, 446 U.S. 14, 23 (1980).  *See also,* Florida Auto Auction of Orlando, Inc. v. United States, 74 F.3d 498, 502 (4th  Cir. 1996) ("The Act does not create new causes of action[.] ... Instead, the Act only serves to convey jurisdiction when the alleged breach of duty is tortious under state law." (quotation marks omitted)).  Therefore, it must also be determined whether Plaintiff's claims survive the United States' motion to dismiss pursuant to Rule 12(b)(6).

Plaintiff raises three claims pursuant to the FTCA:   1) false imprisonment; 2) general negligence; and 3) intentional infliction of emotional distress.   North Carolina law controls these claims, and they shall now be discussed in turn.

### a. False imprisonment

In North Carolina, "[f]alse imprisonment is the illegal restraint of the person of any one against his or her will." Rogers v. T.J.X. Companies, Inc., 404 S.E. 2d 664, 666 (N.C. 1991). Involuntary restraint and unlawful restraint are two essential elements of the tort . . ." Dellinger v. Belk, 238 S.E. 2d 788, 790 (N.C. App. 1977)(*citing*, Black v. Clark's Greensboro, Inc., 139 S.E. 2d 199 (N.C. 1964)). "Where no force or violence is actually used, the submission must be to a reasonably apprehended force." Black, 139 S.E. 2d at 201. Ultimately, a cause of action for false imprisonment "may arise when the arrest or detention is without warrant . . . or the warrant charges no criminal offense . . . or the warrant is void, or the person arrested is not the person named in the warrant . . ." Melton v. Rickman, 36 S.E. 2d 276, 277-278 (N.C. 1945)(internal citations omitted). Plaintiff has alleged each of these elements. Citing Rhodes v. Collins, 150 S.E. 492 (N.C. 1929), the United States argues that "if an imprisonment is under legal authority, it may be malicious but it cannot be false." (DE-50, pg. 13). However, that argument does not defeat Plaintiff's claim. Defendants had no legal authority to detain Plaintiff, because the statute which purportedly authorized his detention applied only to aliens and not U.S. citizens. It is RECOMMENDED that the United States' motion to dismiss Plaintiff's false imprisonment claim be DENIED.

### b. Negligence

When a complaint alleges general negligence under the FTCA, "[t]he test is no more than whether Government agents in undertaking to perform an active course of conduct, exercised such ordinary care as is required of a reasonable, prudent person under the circumstances." Lumsden v. United States, 555 F. Supp. 2d 580, 589 (E.D.N.C. 2008). In Lumsden, this Court found that the plaintiffs had sufficiently pleaded a claim of negligence under the Federal Tort

Claims Act by alleging that the Government "failed to exercise ordinary care and skill in undertaking a course of conduct." *Id.*

In the instant case, the Amended Complaint likewise sufficiently pleads general negligence by alleging that Defendants failed to use reasonable care in their course of conduct. (DE-8, ¶¶ 148-153). Specifically, the Amended Complaint pleads that Defendants failed to exercise reasonable care in such a way that resulted in Plaintiff's wrongful detention and deportation. *Id.* Assuming Plaintiff's allegations to be true, Defendants' negligent conduct includes, among other things: 1) failure to review readily available documentation; 2) failure to investigate Plaintiff's claims that he was a U.S. citizen; and 3) coercing Plaintiff to sign factually inaccurate statements. *Id.*

The United States argues that the "public duty doctrine" shields it from liability. As defined in North Carolina, "[t]he public duty doctrine is a[ ] rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity." Myers v. McGrady, 628 S.E.2d 761, 766 (N.C. 2006). "The rule provides that when a governmental entity owes a duty to the general public ... individual plaintiffs may not enforce the duty in tort." *Id*. at 766. This doctrine has often been described as "duty to all, duty to none." Strickland v. University of North Carolina at Wilmington, 712 S.E. 2d 888, 890 (N.C. App. 2011). "The classic example of the public duty doctrine's applicability . . . involves a negligence claim alleging a law enforcement agency's failure to protect a person from a third party's criminal act." *Id*. (*citing*, Braswell v. Braswell, 410 S.E.2d 897, 901 (1991)(recognizing the public duty doctrine and applying it to a claim against a sheriff for negligent failure to protect a murder victim from her murderer)). The Fourth Circuit has deemed the public duty doctrine applicable in FTCA claims. Florida Auto Auction, 74 F.3d at 502.

15

However, the public duty doctrine does not apply here. First, the North Carolina Supreme Court has limited the application of the doctrine to the facts of <u>Braswell</u>. <u>Lovelace v. City of Shelby</u>, 526 S.E. 2d 652, 654 (N.C. 2000). Therefore, the North Carolina Supreme Court has declined to expand the public duty doctrine beyond agencies other than local law enforcement departments exercising their general duty to protect the public. <u>Wood v. Guilford County</u>, 558 S.E.2d 490, 495 (N.C. 2002). Notably:

> An exhaustive review of the public duty doctrine as applied in North Carolina reveals no case in which the public duty doctrine has operated to shield a defendant from acts directly causing injury or death. Rather, the application of the public duty doctrine in this State has been confined to cases where the defendant's actions proximately or indirectly result in injury.

> <u>Moses v. Young</u>, 561 S.E. 2d 332, 334 (N.C. App. 2002).

Therefore "the public duty rule applies only to situations in which a plaintiff has been directly harmed by the conduct of a third person and only indirectly by a public employee's dereliction of a duty-a duty imposed on him or her solely by his or her contract of employment-to interrupt or prevent the third person's harmful activity." <u>Smith v. Jackson County Board of Education</u>, 608 S.E. 2d 399, 406 (N.C. App. 2005)(*quoting* 63C Am.Jur.2d Public Officers and Employees § 248 (1997)). As noted above, this case does not involve a failure to furnish protection or a failure to prevent a criminal act. Rather, the claim originates from allegations that the United States improperly detained and deported one of its own citizens. The public duty doctrine does not shield the United States from liability in this situation. *Id.* at 407 (holding that application of the public duty doctrine as a blanket defense to all actions of police officers would not be consistent with the purpose of the public duty doctrine). It is RECOMMENDED that the United States' motion to dismiss Plaintiff's negligence claim be DENIED.

16

### c.  Intentional infliction of emotional distress

Next, the United States argues that Plaintiff has failed to state a valid intentional infliction of emotional distress ("IIED") claim.   To succeed on an IIED claim in North Carolina, a plaintiff must plead and prove the following: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." <u>Dickens v. Puryear</u>, 276 S.E.2d 325, 335 (N.C. 1981).   Furthermore, a "claim for intentional infliction of emotional distress may . . . lie where the defendant's actions indicate a reckless indifference to the likelihood that they will cause emotional distress to the plaintiff." <u>Bryant v. Thalhimer Bros., Inc.</u>, 437 S.E.2d 519, 522-253 (N.C. App. 1993). *See also*, <u>Dickens</u>, 276 S.E.2d at 335.

The United States contends that Plaintiff has not pleaded "extreme and outrageous conduct."  (DE-50, pg. 19).   That prong of a IIED claim requires a plaintiff to show that the defendant's conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Foster v. Crandell</u>, 638 S.E.2d 526, 537 (N.C. App. 2007).   In response, Plaintiff argues that improperly detaining and "[u]njustly exiling a man ought to be beyond this society's bounds."  (DE-57, pg. 26).   The undersigned agrees.   Here, Plaintiff alleges that ICE agents ignored evidence of Plaintiff's citizenship, coerced him into signing a statement that ultimately proved false, and then improperly deported him.   They removed him from the country again when he attempted to re-enter, ignoring his claims of citizenship.   When these mistakes were finally corrected, the United States attempted to deport Plaintiff yet again.   If proven true, these actions are "extreme and outrageous."   *See, e.g.*, <u>Rogers v. T.J.X. Companies Inc.</u>, 398 S.E. 2d 610, 614 (N.C. App. 1990)(holding that false accusations of shoplifting supported IIED claims because plaintiff, among other things, was "stripped of her dignity"), *reversed on other grounds by*,

17

Rogers v. T.J.X. Companies Inc., 404 S.E. 2d 664(N.C. 1991); West v. King's Department Store, Inc., 365 S.E.2d 621, 622-626 (N.C. 1988)(accusing customer of stealing, despite evidence to the contrary, could sustain *prima facie* case of IIED).   It is RECOMMENDED that the United States' motion to dismiss Plaintiff's IIED claim be DENIED.

**4.   Foreign Country exception**

Finally, the United States argues that "any surviving FTCA claim would allow recovery for only those injuries that [Plaintiff] allegedly suffered within the United States" due to the FTCA's foreign country exception.  (DE-50, pg. 21).   That provision preserves the United States' sovereign immunity from tort liability with respect to "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). The Supreme Court has interpreted the straightforward language of the foreign country exception to mean that it "bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." Sosa v. Alvarez-Machain, 542 U.S. 692, 712 (2004).   Plaintiff concedes "that the foreign country exception operates in this case to bar certain types of damages that [Plaintiff] otherwise would be entitled to recover, namely, those based solely on the additional injuries that he suffered at the hands of third parties in Central America."  (DE-57, pg. 28).   For this reason, the undersigned RECOMMENDS that the United States' motion to dismiss based on the foreign country exception be GRANTED and that Plaintiff's claims be DISMISSED to the extent he seeks damages for injuries which occurred outside the United States.   The undersigned notes that Plaintiff's FTCA claims for relief survive this dismissal, as clearly some of his alleged injuries occurred inside the United States.

**B.   ICE Defendants motion to dismiss (DE-51)**

The ICE Defendants move to dismiss Plaintiff's Bivens claims.   As noted above, these

18

claims involve alleged violations of the Fifth Amendment's Due Process Clause (Counts 1 and 2), and the Fourth Amendment (Count 3).

## 1.   Cognizably of Plaintiff's Bivens' claims

In <u>Bivens</u>, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001).   "Because implied causes of action are disfavored, the Court has been reluctant to extend <u>Bivens</u> liability to any new context or new category of defendants." <u>Iqbal</u>, 129 S. Ct. at 1948 (internal quotations and citations omitted). *See also*, <u>Judicial Watch, Inc. v. Rossotti</u>, 317 F.3d 401, 409 (4th  Cir. 2004) ("In the more than thirty years since <u>Bivens</u>, the Court has been very hesitant to imply other private actions for money damages.").   The Supreme Court has observed:

> <u>Bivens</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, held that the victim of a Fourth Amendment violation by federal officers had a claim for damages, and in the years following we have recognized two more nonstatutory damages remedies, the first for employment discrimination in violation of the Due Process Clause, <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the second for an Eighth Amendment violation by prison officials, <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). But we have also held that any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a <u>Bivens</u> remedy unjustified. We have accordingly held against applying the <u>Bivens</u> model to claims of First Amendment violations by federal employers, <u>Bush v. Lucas</u>, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), harm to military personnel through activity incident to service, <u>United States v. Stanley</u>, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); <u>Chappell v. Wallace</u>, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), and wrongful denials of Social Security disability benefits, <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). We have seen no case for extending <u>Bivens</u> to claims against federal agencies, <u>FDIC v. Meyer</u>, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), or against private prisons, <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 122 S.Ct. 515, 151

L.Ed.2d 456 (2001).

Wilkie v. Robbins, 551 U.S. 537, 549-550 (2007).

Here, Plaintiff alleges claims to which Bivens has already been deemed generally applicable: 1) a Fourth Amendment claim; and 2) two Fifth Amendment Due Process claims. *See*, Guardado v. United States, 744 F. Supp. 2d 482, 489 (E.D. Va. 2010). This Court must now determine whether these claims are cognizable under Bivens in the context they are raised by Plaintiff. Wilkie, 551 U.S. at 549.

This analysis generally requires three steps. Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006). Specifically a court must determine that (1) Congress has not already provided an exclusive statutory remedy; (2) there are no special factors counseling hesitation in the absence of affirmative action by Congress; and (3) there is no explicit congressional declaration that money damages not be awarded. *Id.* (quotation omitted).

Here, the ICE Defendants argue that the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, precludes Plaintiff's Bivens claims because it provides an exclusive statutory remedy. The INA was substantially amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). As noted by the Supreme Court:

> When Congress passed IIRIRA, it "repealed the old judicial-review scheme set forth in [8 U.S.C.] § 1105a and instituted a new (and significantly more restrictive) one in 8 U.S.C. § 1252." Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 475, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) ( AAADC ). The new review system substantially limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for review. See, e.g., 8 U.S.C. § 1252(a)(2) (barring review of certain removal orders and exercises of executive discretion); § 1252(b)(3)(C) (establishing strict filing and briefing deadlines for review proceedings); § 1252(b)(9) (consolidating challenges into petition for review) . . .

Before IIRIRA, courts of appeals lacked jurisdiction to review the deportation order of an alien who had already left the United States. See § 1105a(c) (1994 ed.) ("An order of deportation or of exclusion shall not be reviewed by any court ... if [the alien] has departed from the United States after the issuance of the order").

Nken v. Holder, 129 S.Ct. 1749, 1755 (2009)(alteration in original).

The ICE Defendants assert that "[t]he existence of a deliberately crafted statutory scheme precludes a Bivens remedy because it demonstrates that Congress did not intend to allow a separate private right of action for damages. Schweiker v. Chilicky, 487 U.S. 412, 421-25 (1988)." (DE-52, pg. 6). Specifically, the ICE Defendants contend:

In this case, [Plaintiff's] detention and subsequent removal proceedings were governed by . . . the INA. The Supreme Court has characterized the INA as "the comprehensive federal statutory scheme for regulation of immigration and naturalization." DeCanas v. Bica, 424 U.S. 351, 353 (1976). For example, the INA provides that certain classes of criminal aliens must be arrested and detained pending a decision on whether the alien is to be removed. See 8 U.S.C. § 1226(c). It includes detailed provisions governing removal proceedings before an immigration judge, and sets forth numerous procedural safeguards for those proceedings. See, e.g., 8 U.S.C. § 1229a. The INA also provides specific procedures for detention as well as requirements for relief from detention. See, e.g., 8 U.S.C. §§ 1225, 1226, 1231.

Most pertinent to this case, the INA allows individuals to raise constitutional challenges in their removal proceedings and on a petition for review in a court of appeals. See 8 U.S.C. §§ 1252(a)(2)(D), 1252(b)(9). And it specifically allows suspected aliens claiming to be U.S. citizens to seek review of that determination in the appellate courts as well. See 8 U.S.C. § 1252(b)(5). But Congress has strictly limited judicial review of immigration decisions, including claims to U.S. citizenship, beyond those expressly allowed in the INA. See 8 U.S.C. §§ 1252(b)(9), 1252(g), 1252(a)(2)(B)(ii), 1252(b)(5)(C). Indeed, the INA provides that a petition filed in the appropriate court of appeals is the "sole and exclusive" means for judicial review of constitutional claims arising from immigration enforcement operations. 8 U.S.C. §§ 1252(a)(2)(D) & (a)(5); see also Nken v. Holder, 129 S. Ct. 1749, 1755 (2009) (explaining that amendments to the INA have "limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for

review"). Thus, apart from the channels of review specified by Congress, the Court has recognized that "the theme of the legislation" was expressly "aimed at protecting the Executive's discretion from the courts." <u>Reno v. American-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 486 (1999)

(DE-52, pg. 8-9)(emphasis in original omitted).

Defendants' argument is unconvincing. The United States loses sight of the fact that Plaintiff is not an alien challenging a decision of removal. Rather, he is a United States citizen alleging that immigration officials deliberately violated his rights in the execution of their duties. In short, "Plaintiff is not attempting to use the present lawsuit to circumvent the administrative process set up to review orders of removal." <u>Turnbull v. United</u> States, 2007 WL 2153279 (N.D.Ohio July 23, 2007).

The undersigned agrees with Plaintiff that "[u]ltimately, [Plaintiff's] <u>Bivens</u> claims have little to do with Congress' legislative power over the admission of aliens . . . because [Plaintiff] is not an alien -- he is an American-born U.S. citizen who asserts <u>Bivens</u> claims against federal agents who [deliberately] violated his constitutional rights . . . [t]he proper vehicle for vindicating [Plaintiff's] rights is the Bivens claim, not an administrative challenge to the federal immigration scheme." (DE-56, pg. 9)(quotation omitted). Therefore, the undersigned finds that the INA does not preclude recovery for Plaintiff's <u>Bivens</u> claims.

However, the undersigned must still determine whether any special factors counsel against extending <u>Bivens</u> liability to include these claims. <u>Iqbal</u>, 129 S. Ct. at 1948. The undersigned finds that such special factors do exist, except with regard to Plaintiff's Fourth Amendment claim. Plaintiff's Fourth Amendment claim is clearly permissible, as <u>Bivens</u> explicitly "held that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court." <u>Malesko</u>, 534 U.S. at 66. However,

Plaintiff's Due Process claims seek to expand the application of <u>Bivens</u>, something the Supreme Court has consistently declined to do.

Specifically, the Supreme Court "has . . . on multiple occasions declined to extend <u>Bivens</u> because Congress is in a better position to decide whether or not the public interest would be served by the creation of new substantive legal liability." *Id.* at 290 (quotation omitted). "[S]o well-suited is Congress to determine the policies pertaining to a remedial scheme that neither the absence nor the incompleteness of such a scheme represents an invitation for a court to step in to correct what it may perceive as an injustice toward an individual litigant." *Id.* (citation omitted). The Supreme Court described the application of <u>Bivens</u> in <u>Malesko</u>;

> Our authority to imply a new constitutional tort, not expressly authorized by statute, is anchored in our general jurisdiction to decide all cases arising under the Constitution, laws, or treaties of the United States. . . We first exercised this authority in <u>Bivens,</u> where we held that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court . . .
>
> In the decade following <u>Bivens</u>, we recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment . . . and the Cruel and Unusual Punishments Clause of the Eighth Amendment . . .
>
> Since <u>Carlson</u> we have consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants . . . In <u>Bush v. Lucas</u>. . . . we declined to create a <u>Bivens</u> remedy against individual Government officials for a First Amendment violation arising in the context of federal employment . . .
>
> In <u>Schweiker v. Chilicky,</u> we declined to infer a damages action against individual Government employees alleged to have violated due process in their handling of Social Security applications. We observed that our decisions have responded cautiously to suggestions that <u>Bivens</u> remedies be extended into new contexts . . .
>
> Most recently, in <u>FDIC v. Meyer,</u> we unanimously declined an invitation to extend <u>Bivens</u> to permit suit against a federal agency . . .
>
> From this discussion, it is clear that the claim urged by respondent is

23

fundamentally different from anything recognized in <u>Bivens</u> or subsequent cases. In 30 years of <u>Bivens</u> jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct. Where such circumstances are not present, we have consistently rejected invitations to extend <u>Bivens,</u> often for reasons that foreclose its extension here.

<u>Malesko</u>, 534 U.S. 67-70(quotations and citations omitted).

Ultimately, the undersigned agrees with the concurrence in <u>Malesko</u>, which states:

<u>Bivens</u> is a relic of the heady days in which this Court assumed common-law powers to create causes of action-decreeing them to be "implied" by the mere existence of a statutory or constitutional prohibition. As the Court points out, *ante*, at 519, n. 3, we have abandoned that power to invent "implications" in the statutory field, *see* <u>Alexander v. Sandoval</u>, 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). There is even greater reason to abandon it in the constitutional field, since an "implication" imagined in the Constitution can presumably not even be repudiated by Congress. I would limit <u>Bivens</u> and its two follow-on cases ( <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)) to the precise circumstances that they involved.

<u>Malesko</u>, 534 U.S. at 75 (Scalia, J., concurring)(quotations omitted).

For these reasons, the undersigned shall "responded cautiously to [Plaintiff's] suggestion[] that <u>Bivens</u> . . . be extended into [a] new context." <u>Malesko</u>, 534 U.S. at 68-69 (*quoting* <u>Schweiker</u>, 487 U.S. at 421).

Here, Plaintiff contends that "[b]y illegally, arbitrarily, and capriciously deporting [Plaintiff], a United States citizen, to Mexico, [the ICE Defendants] deprived [Plaintiff] of his constitutional right to liberty without due process of law in violation of the Fifth Amendment to the United States Constitution." (DE-8, ¶ 122). In addition, Plaintiff asserts that the ICE Defendants violated Plaintiff's rights "when they deported or caused [Plaintiff] to be deported

24

without reasonable basis or lawful authority." *Id.* at ¶ 124.   In response, the Government argues

that the ICE Defendants did not deport Plaintiff.   (DE-52, pg. 27).   Specifically, the Government

notes that "the ICE defendants merely commenced removal proceedings against plaintiff . . . [i]n

the end, it was an immigration judge in Georgia – not the ICE defendants here in North Carolina –

who ultimately ordered [Plaintiff's] removal." *Id.* (quotations and emphasis omitted).   The

undersigned agrees.   "The purpose of <u>Bivens</u> is to deter individual federal officers from

committing constitutional violations" <u>Malesko</u>, 534 U.S. at 70.   Permitting Plaintiff's Due

Process claim to proceed under <u>Bivens</u> will not achieve this end, as the ICE Defendants did not

make the determination that Plaintiff now asserts was not guarded by Due Process.   Furthermore,

the Government also states that "these allegations amount to . . . a mere duplication of [Plaintiff's]

Fourth Amendment . . .   claim that his detention was continued well beyond the scheduled release

date and that he was therefore detained in violation of his right to be free from unreasonable

seizures." (DE-52, pg. 29).   Again, the undersigned agrees.   Accordingly, the undersigned finds

that these facts constitute special factors counseling against the extension of <u>Bivens</u>.

Plaintiff also asserts that "[b]y erroneously classifying [Plaintiff] as an alien . . . [the

ICE Defendants] deliberately and unconstitutionally discriminated against [Plaintiff] on the basis

of his race and ethnicity so as to deny him equal protection of the law in violation of the Fifth

Amendment to the United States Constitution." (DE-8, ¶ 130).   The undersigned finds that

permitting a <u>Bivens</u> claim against immigration officials for "erroneously classifying [an

individual] as an alien" constitutes a "cure [that] would be worse than the disease." <u>Wilkie</u>, 551

U.S. at 561. *See also*, <u>Appiah v. U.S. I.N.S.</u>, 202 F. 3d 704, 710 (4th Cir. 2000)("constraints of

rationality imposed by the constitutional requirement of substantive due process and of

nondiscrimination exacted by the equal protection component of the due process clause do not

limit the federal government's power to regulate either immigration or naturalization")(quotation omitted)).

For these reasons, it is RECOMMENDED that Plaintiff's Due Process claims be DISMISSED because they are not viable pursuant to <u>Bivens</u>. Specifically, the undersigned finds that special factors counsel against the application of <u>Bivens</u> to Plaintiff's Due Process claims. Plaintiff's remaining Fourth Amendment claim shall now be analyzed.

**2.   Plaintiff's Fourth Amendment claim**

The ICE Defendants also argue that Plaintiff's Fourth Amendment claim is substantively without merit. In these claims, Plaintiff contends, respectively, that: 1) the ICE Defendants "knowingly and intentionally denied [Plaintiff] his constitutional right to due process by coercing him into signing false statements, by intimidating [Plaintiff] during the interrogation process, and by . . . caus[ing] [Plaintiff] to be deported without reasonable basis or lawful authority"; and 2) the ICE Defendants "intentionally and unlawfully detained [Plaintiff] in violation of his constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution." (DE-8, ¶¶ 123, 124, 137). As noted above, these claims are supported by several specific factual allegations, including, *inter alia*, Plaintiff's assertion that the ICE Defendants "performed computer database searches on [Plaintiff's] criminal history, revealing numerous entries and notations indicating that [Plaintiff] was a U.S. citizen with a valid Social Security number affiliated with several minor variants of the name 'Mark Lyttle' having been used . . ." *Id.* at ¶ 43.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Persons seized by a federal agent in an unreasonable manner, may sue the agent personally and recover monetary damages

26

against him, so long as "it would be clear to an objectively reasonable officer that his conduct violated" the Fourth Amendment. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). The Supreme Court recently stated that:

> Fourth Amendment reasonableness is predominantly an objective inquiry. . . . We ask whether the circumstances, viewed objectively, justify the challenged action. . . . If so, that action was reasonable whatever the subjective intent motivating the relevant officials . . . This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts, . . . and it promotes evenhanded, uniform enforcement of the law . . .
>
> Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)(quotations and citations omitted).

The ICE Defendants argue that Plaintiff's allegation that he was "unlawfully and unconstitutionally" detained is "conclusory." (DE-52, pg. 14). This argument is perplexing. Plaintiff was scheduled to be released from state custody on October 26, 2008. (DE-8, ¶ 58). He was instead taken into ICE custody after the expiration of his state sentence. Id. at ¶ 58. Based upon the alleged actions and omissions of the ICE Defendants, Plaintiff remained in ICE custody until December 18, 2008. Id. at ¶ 90. Plaintiff's improper seizure only ended after he was improperly deported. It is undisputed that the ICE Defendants were mistaken in their belief that Plaintiff was an alien, and therefore there was no lawful basis for detaining Plaintiff after October 26, 2008. Moreover, Plaintiff alleges that the ICE Defendants intentionally ignored evidence of Plaintiff's citizenship. Id. at ¶¶ 46, 52, 53, 56. He also alleges the ICE Defendants coerced him into signing a false statement. Id. at ¶ 55. Certainly, while Defendants' alleged coercion is disputed, the fact the Plaintiff inexplicably signed a statement incorrectly stating he was an alien is not. While Defendants may dispute Plaintiff's allegations, they are not "conclusory."

Regardless, it is plainly obvious that Plaintiff was seized. If, as alleged, "information

and personal data retrieved [during this seizure] contained numerous references to [Plaintiff's] U.S. citizenship", that seizure was objectively unreasonable. *Id.* at ¶ 55. The seizure was also objectively unreasonable if it was based on a statement that Plaintiff "was coerced and manipulated . . . into signing." *Id.* at ¶ 49.

Finally, the ICE Defendants contend that qualified immunity shields them from liability for Plaintiff's Fourth Amendment claim. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." al-Kidd, 131 S.Ct at 2080 (*citing* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 2083 (quotation and alteration omitted). A "case directly on point [is not required], but existing precedent must have placed the statutory or constitutional right beyond debate." *Id.* Liability may be imposed only if "'a reasonable officer would know that the specific conduct at issue was impermissible.'" Owens ex rel. Owens v. Lott, 372 F.3d 267, 273 (4th Cir. 2004) (*quoting* Rogers v. Pendleton, 249 F.3d 279, 285 (4th Cir. 2001)). The purported constitutional right must be defined "at a high level of particularity" and is "clearly established" only if it has been "specifically adjudicated" or it is "manifestly apparent from broader applications of the constitutional premise in question." *Id.* at 279 (*quoting* Edwards, 178 F.3d at 251). Simply put, "the contours of the right must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." Edwards, 178 F.3d at 251 (internal quotation marks omitted). To overcome qualified immunity at the pleading stage, a plaintiff must therefore provide "sufficient factual matter, accepted as true, to

28

'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (*quoting* <u>Twombly</u>, 550 U.S. at 570)

To reiterate, Plaintiff alleges he was improperly seized by the ICE Defendants. Because Plaintiff is an United States citizen, the ICE Defendants had no legal basis for detaining Plaintiff beyond October 28, 2008. He was detained by ICE until December 18, 2008, at which point he was improperly removed from the United States. Claims of false arrest, false imprisonment and malicious prosecution should be considered claims alleging a seizure of the person in violation of the Fourth Amendment. <u>Rogers v. Pendelton</u>, 249 F.3d 279, 294 (4th Cir. 2001). The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and a seizure of an individual effected without probable cause is unreasonable. <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 183 (4th Cir. 1996). Here, Plaintiff alleges that the ICE Defendants deliberately ignored evidence of his citizenship. Thus, Plaintiff has pled the violation of a clearly established right. "At a general level, the right at stake here . . . is the right not to be deprived of liberty or property based on the deliberate use of evidence fabricated by or known to be false to a law enforcement official." <u>White v. Wright</u>, 150 Fed. Appx. 193, 198 (4th Cir. 2005). The Fourth Circuit has recognized that an officer who violates this right may be subject to civil liability. *Id.*

For these reasons, the ICE Defendants are not entitled to qualified immunity. Accordingly, it is RECOMMENDED that the ICE Defendants' motion to dismiss Plaintiff's Fourth Amendment claim be DENIED.

**III.  Conclusion**

For the aforementioned reasons, it is RECOMMENDED that:

1)  The United States' motion to dismiss Plaintiff's FTCA false

imprisonment claim be DENIED;

2)   The United States' motion to dismiss Plaintiff's FTCA negligence claim be DENIED;

3)   The United States' motion to dismiss Plaintiff's FTCA IIED claim be DENIED;

4)   The United States' motion to dismiss based on the foreign country exception of the FTCA be GRANTED and that Plaintiff's FTCA claims be DISMISSED to the extent they seek damages for injuries which occurred outside the United States;

5)   The ICE Defendant's motion to dismiss Plaintiff's Due Process claims be GRANTED because those claims are not viable pursuant to Bivens, and that Plaintiff's First and Second Claims for Relief be DISMISSED; and

6)   The ICE Defendants' motion to dismiss Plaintiff's Fourth Amendment claim be DENIED.


SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, November 14, 2011.


_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE